# Matter of A-A-F-V-, Respondent

*Decided by Board June 6, 2025*[1]

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The applicant, a bisexual criminal deportee with visible gang tattoos, has not established an individualized risk of torture in detention in El Salvador.

FOR THE RESPONDENT:  Pro se

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Lauren N. Mattioni, Assistant Chief Counsel

BEFORE:  Board Panel:  MULLANE, GOODWIN, and HUNSUCKER, Appellate Immigration Judges.

HUNSUCKER, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals from the Immigration Judge's decision dated December 13, 2024, granting the applicant's[2] request for deferral of removal under the Convention Against Torture ("CAT").[3]  *See* 8 C.F.R. §§ 1208.16(c), 1208.17 (2025); 8 C.F.R. § 1208.18(a) (2020).  DHS' appeal will be sustained.

The applicant claims a fear of torture in El Salvador by the Salvadoran government based on his status as a bisexual criminal deportee with visible gang tattoos.  The Immigration Judge found the applicant carried his burden of establishing that it is more likely than not he would be targeted for torture upon return to El Salvador.  DHS argues that the Immigration Judge erroneously conflated the applicant's risk of arrest with his risk of torture,

---

[1]  Pursuant to Order No. 6309-2025, dated June 30, 2025, the Attorney General designated the Board's decision in *Matter of A-A-F-V-* (BIA Jun. 6, 2025), as precedent in all proceedings involving the same issue or issues.  *See* 8 C.F.R. § 1003.1(g)(3) (2025).  Editorial changes have been made consistent with the designation of the case as a precedent.

[2]  The applicant is in withholding-only proceedings.

[3]  The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994).

and that the Immigration Judge clearly erred in finding that the applicant is more likely than not to be tortured upon removal to El Salvador even considering the current state of exception. We agree with DHS and will reverse the Immigration Judge's grant of CAT protection.

When evaluating a claim for protection under the CAT, an Immigration Judge must examine: (1) what is likely to happen to the applicant if he is removed, and (2) whether what is likely to happen amounts to the legal definition of torture. *Ibarra Chevez v.* Garland, 31 F.4th 279, 291 (4th Cir. 2022). The question of what will happen to an applicant is a factual finding the Board reviews for clear error. *Id.* Whether such harm amounts to torture is a legal determination that we review de novo. *Id.*; *see also Matter of R-A-F-*, 27 I&N Dec. 778, 779 (A.G. 2020).

The applicant seeks protection under the CAT based on a fear that he will be detained, imprisoned, and tortured in El Salvador because of the government's state of exception policy and its treatment of bisexual criminal deportees with visible gang tattoos. The evidence of record establishes that the Salvadoran Government announced a state of exception in March 2022 following an increase in gang-related homicide, including the murder of 87 people in 1 weekend. Under the state of exception, which must be renewed monthly, security forces are empowered to arrest anyone suspected of belonging to a gang or providing support to gangs.

The Immigration Judge did not clearly err in finding that the applicant is a bisexual criminal deportee with visible gang tattoos. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2025). Further, the Immigration Judge did not clearly err in finding that if the applicant is removed, he will likely be detained upon his arrival in El Salvador pursuant to the state of exception policy because he will be identified as a suspected gang member deported from the United States with numerous gang-related tattoos and a criminal history. *See Matter of Z-Z-O-*, 26 I&N Dec. 586, 590 (BIA 2015) (explaining that "an Immigration Judge's predictive findings of what may or may not occur in the future are findings of fact, which are subject to a clearly erroneous standard of review"). The record establishes that the applicant has a serious criminal history in the United States, and the information about his criminal history would likely be shared with the Salvadoran Government through the Criminal History Information Sharing Program between the United States and El Salvador. Further, the evidence establishes a history of widespread detention of prior and suspected gang members in El Salvador.

We reverse the Immigration Judge's determination that the applicant has established a clear probability of torture in El Salvador. We review the

Immigration Judge's predictive factual findings for clear error, considering all relevant evidence in the record. *Turkson v. Holder*, 667 F.3d 523, 529–30 (4th Cir. 2012) (holding that an Immigration Judge's predictions of likely future mistreatment are factual findings subject to clear error review); *Matter of Z-Z-O-*, 26 I&N Dec. at 590. In finding that the applicant would suffer harm satisfying the definition of torture in detention, the Immigration Judge relied heavily on statistical information and country conditions evidence showing that some detainees and suspected gang members have been subjected to mistreatment, torture, or death while in detention. However, the Immigration Judge relied on a relatively small number of anecdotal incidents of mistreatment or death that fall well short of supporting a clear probability of torture. Overall, out of a total prison population of approximately 95,000 detainees as of November 2022, the Salvadoran Government documented 90 deaths in custody, some of which were attributable to lack of access to medication. Even if the actual number of abuses and deaths is higher than that documented by the Salvadoran Government, the evidence still demonstrates that only a small percentage of detainees died out of the tens of thousands detained.

Moreover, the Immigration Judge's finding that numerous detainees have died in detention does not establish that public officials caused those deaths or that the unspecified human rights abuses rise to the level of torture. *See* 8 C.F.R. § 1208.18(a) (defining torture). The substandard prison conditions referenced by the Immigration Judge, which may include severe overcrowding and lack of food, do not amount to torture as a matter of law unless "specifically intended to inflict severe physical or mental pain or suffering." 8 C.F.R. § 1208.18(a)(5); *see also Matter of A-A-R-*, 29 I&N Dec. 38, 43–45 (BIA 2025) (holding that the record did not establish that harsh prison conditions in El Salvador are specifically intended to torture detained gang members); *Matter of R-A-F-*, 27 I&N Dec. at 780; *Matter of J-R-G-P-*, 27 I&N Dec. 482, 484 (BIA 2018) ("'[T]orture' does not cover 'negligent acts' or harm stemming from a lack of resources.").

There are significant similarities between this case and the Board's decision in *Matter of J-E-*, 23 I&N Dec. 291 (BIA 2002). In *Matter of J-E-*, the Haitian Government had a policy of incarcerating criminal deportees to deter criminal activity in Haiti. *Matter of J-E-*, 23 I&N Dec. at 293, 299–300. We concluded that the Haitian Government had a legitimate national interest in protecting its citizens from increased criminal activity, and that Haitian authorities did not use torture as a matter of policy. *Id*. at 300, 303. The Salvadoran Government's policy of incarcerating suspected gang members as a method of addressing historic violence in the country is similar to the policy in *Matter of J-E-*. Like in *Matter of J-E-*, the Salvadoran state of

exception policy "in itself appears to be a lawful enforcement sanction designed . . . to protect the populous from criminal acts" committed by gang members. *Id*. at 300; *see also* 8 C.F.R § 1208. 18(a)(3) ("Torture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions.").

While the Immigration Judge found that bisexual individuals in El Salvador may face human rights abuses, violence, and discrimination, the record fails to establish the individualized risk of torture as required for CAT protection. *See Kerr v. Garland*, 66 F.4th 462, 471 (4th Cir. 2023) (affirming the agency's denial of CAT protection where the alien had not established "that he would be singled out for torture as . . . a 'bisexual former gang member'"); *Matter of A-A-R-*, 29 I&N at 41–42 (holding that anecdotal reports of some incidents of severe harm or death are not sufficient to show that the alien, in particular, would more likely than not be tortured in a Salvadoran prison); *see also Paredes v. Bondi*, No. 24-1105, 2025 WL 1249367, at *7 (4th Cir. Apr. 30, 2025) (unpublished). Evidence of the general possibility of torture does not meet the applicant's burden of establishing that it is more likely than not that he will be targeted for such treatment. *See Matter of S-V-*, 22 I&N Dec. 1306, 1313 (BIA 2000) ("Specific grounds must exist that indicate the individual would be personally at risk."); *see also Lizama v. Holder*, 629 F.3d 440, 449–50 (4th Cir. 2011) (denying CAT protection where a respondent did not demonstrate a specific risk of harm to himself). The applicant cannot establish eligibility for CAT protection by stringing together a "series of suppositions" to show that torture is more likely than not to occur and instead must shows that each step in the hypothetical chain of events is more likely than not to happen. *Matter of J-F-F-*, 23 I&N Dec. 912, 917–18 (A.G. 2006); *see also Matter of M-B-A-*, 23 I&N Dec. 474, 479 (BIA 2002) (rejecting a CAT claim based upon a chain of assumptions and the applicant's subjective fear of what might happen).

The Immigration Judge's predictive factual findings draw unsupported inferences from the record and fall short of demonstrating that the applicant has a greater than 50 percent chance of being tortured upon removal to El Salvador. *See Kerr*, 66 F.4th at 468 (holding that the applicant must demonstrate that the aggregate risk of torture exceeds 50 percent). Although some individuals arrested and detained under the state of exception as suspected gang members have been abused or died while in detention, the record does not establish a clear probability of future torture for the applicant.

Thus, although there is no clear error in the Immigration Judge's finding that the applicant will likely be identified as a criminal deportee with visible

gang tattoos and detained upon return to El Salvador, we disagree with the Immigration Judge's conclusion that the applicant has satisfied his burden of proving that it is more likely than not that he will suffer harm amounting to "torture" by, at the instigation of, or with the consent or acquiescence of a public official, even considering his sexuality. *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); *see also Matter of R-A-F-*, 27 I&N Dec. at 779 (emphasizing that the Board reviews de novo the ultimate question of whether the alien's predicted harm satisfies the legal definition of torture); *Paredes*, 2025 WL 1249367, at *9 (concluding that the BIA's reversal of an Immigration Judge's grant of CAT protection was "was not only reasonable but compelled by the evidentiary gaps in the record"). As the cumulative record does not establish the applicant would likely be tortured by, at the instigation of, or with the consent or acquiescence of a Salvadoran public official, we need not remand for additional factfinding. *See Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982) ("[R]emand is the proper course unless the record permits only one resolution of the factual issue."); *accord N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 220 (4th Cir. 2016). Accordingly, DHS' appeal will be sustained, and the Immigration Judge's grant of CAT protection will be vacated. The applicant will be removed pursuant to his prior removal order.

**ORDER:** DHS' appeal is sustained.

**FURTHER ORDER:** The Immigration Judge's order dated December 13, 2024, granting protection under the CAT is vacated.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2025).