# Matter of J-C-A-G-, Applicant

*Decided by Board September 19, 2025[1]*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The applicant, who cooperated with United States law enforcement against the cartel, did not demonstrate a clear probability of torture where his fear is based on unsubstantiated statements from a coconspirator and generalized evidence of cartel violence.

FOR THE APPLICANT: Nora Searle, Esquire, Bronx, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: M. Neal Ward, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, Chief Appellate Immigration Judge; MULLANE and GOODWIN, Appellate Immigration Judges.

GOODWIN, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals the Immigration Judge's February 27, 2025, decision granting the applicant deferral of removal under the Convention Against Torture ("CAT").[2] The applicant, a native and citizen of Mexico, opposes the appeal. The appeal will be sustained.

The applicant was convicted for his role in a cocaine distribution conspiracy and sentenced to 30 months in Federal prison. He cooperated with Federal law enforcement against his coconspirators, and the Immigration Judge found that if the applicant returned to Mexico, the CJNG drug cartel allegedly behind the conspiracy would more likely than not torture him with the acquiescence of the government to punish him for

---

[1] Pursuant to Order No. 6521-2025, dated December 8, 2025, the Attorney General designated the Board's decision in *Matter of J-C-A-G-* (BIA Sept. 19, 2025), as precedent in all proceedings involving the same issue or issues. *See* 8 C.F.R. § 1003.1(g)(3) (2025). Editorial changes have been made consistent with the designation of the case as a precedent.

[2] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c), 1208.17 (2025); 8 C.F.R. § 1208.18(a) (2020).

"snitching" and to send a message that cooperation with law enforcement will have consequences. The Immigration Judge also found that the Sinaloa cartel or the Mexican police would more likely than not torture the applicant because the cartels and Mexican police are known to target recent deportees for kidnapping, extortion, and interrogation by torture.

First, the Immigration Judge's determination that the applicant will more likely than not be tortured by Mexican police or the Sinaloa cartel contains clear factual and legal error. The Immigration Judge based this conclusion on the applicant's assertion that he gave information about a Sinaloa cartel member to United States authorities, and general evidence of the cartel infiltration of Mexican authorities and the participation of some Mexican police officers in kidnapping recent deportees. But there is not sufficient evidence in the record to show that anyone affiliated with the Sinaloa cartel is aware of the applicant or his cooperation or that he ever received any threats or harm from the cartel. The conclusion that the cartel will expend resources to hunt down and torture the applicant upon his return is speculative. *See Matter of J-F-F-*, 23 I&N Dec. 912, 917–18, 918 n.4 (A.G. 2006) (holding that an applicant's eligibility for CAT protection cannot be established by stringing together a series of suppositions to show that it is more likely than not that torture will result if the evidence does not establish that each step in the hypothetical chain of events is more likely than not to happen).

As to the risk of harm from Mexican police, we agree with DHS that the Immigration Judge conflated harms that may not amount to torture with those that do. In support of her conclusion, the Immigration Judge cited evidence that Mexican police "often target male deportees, 'harassing, extorting, beating, and jailing them without cause.'" While she noted that "the purpose of the[] kidnapping is usually about information obtained through interrogation and torture," this evidence is simply too generalized to establish a particularized, specific risk that the police will more likely than not torture the applicant, rather than leave him unharmed or subject him to lesser harms such as harassment or extortion, based on his status as a recent deportee who cannot speak Spanish. *See, e.g.*, *Herrera-Martinez v. Garland*, 22 F.4th 173, 187 (4th Cir. 2022) (recognizing that generalized reports of human rights violations are insufficient to show that a particular person would likely be tortured); *Nolasco v. Garland*, 7 F.4th 180, 191 (4th Cir. 2021) (explaining that "the mere existence of a pattern of human rights violations in a particular country does not constitute a sufficient ground" to sustain a CAT claim (citation omitted)). Further, the fact that criminals or some Mexican police officers may commit crimes against recent deportees, even routinely, is

insufficient to establish that the applicant will more likely than not personally be tortured.  *See id*.

Second, we cannot affirm the Immigration Judge's determination that the CJNG cartel will more likely than not torture the applicant based on his cooperation with United States authorities.  The applicant testified that a coconspirator and fellow detainee, "Ricardo," who was affiliated with the CJNG, told other detainees that the applicant was a "snitch."  Based on country conditions evidence and expert testimony concerning CJNG's operations and influence, the Immigration Judge found that CJNG already knows about the applicant's cooperation with authorities, plans to target him upon return, and will coordinate with other cartels to find and torture him no matter where he goes in Mexico.

We find this conclusion insufficiently supported by record evidence.  The applicant's fear rests in substantial part on his interactions with Ricardo.  The applicant's knowledge of Ricardo's CJNG connections is based on representations that Ricardo made.  Other than the statements Ricardo gave to the applicant's fellow detainees, nobody has indicated any desire to harm or punish the applicant.  The links in the evidentiary chain leading to the applicant's torture are too tenuous.  We acknowledge the Immigration Judge's consideration of the country conditions and expert testimony, which paint a picture of near-omnipotent cartels who can easily find and torture anyone in Mexico whenever they wish.  But the requirements for CAT deferral are "exacting," and even appreciable risks of torture will not qualify unless they are more likely than not. *Matter of A-A-R-*, 29 I&N Dec. 38, 46 (BIA 2025).  We conclude that the applicant's cooperation with United States law enforcement in a drug conspiracy case coupled with statements from an alleged cartel associate that he is a snitch, even considering the expert and country conditions evidence cited by the Immigration Judge, are insufficient to establish a clear probability that he will be specifically hunted down and tortured by that cartel wherever he relocates in Mexico.

We note that the applicant has never personally received any threats or harm related to his cooperation in detention or in the several years after he was released from prison.  The Immigration Judge discounted this fact based on expert testimony that the cartels try to avoid unnecessary violence in the United States so as to not disrupt lucrative drug operations.  But while this evidence may not be dispositive in itself, it bears upon the seriousness and credibility of the alleged threat.  As DHS argues, in his initial Credible Fear Interview, the applicant expressed a fear of the cartels killing *or* recruiting him if he returned to Mexico, and disclaimed knowledge of the specific cartel that Ricardo worked for.

On our de novo review, we disagree with the Immigration Judge's conclusion that the applicant has satisfied his burden of proving that it is more likely than not that he will suffer harm amounting to "torture" by, at the instigation of, or with the consent or acquiescence of a public official. *See Matter of A-A-F-V-*, 29 I&N Dec. 118, 122 (BIA 2025) (recognizing that the Board reviews de novo the ultimate question of whether the alien's predicted harm satisfies the legal definition of torture). The applicant may face *some* risk of torture resulting from his participation in a potentially cartel-related drug trafficking conspiracy. But the record before us, ultimately predicated on jailhouse hearsay and absent of any actual threats despite ample opportunity for their issuance, is insufficient to establish a *clear probability* of torture even considering the general evidence that the cartels operate in many areas of Mexico with impunity, have corrupted many government officials, and inflict significant and serious violence on Mexican citizens. *See generally id.* at 119–21 (reversing the Immigration Judge's determination that the alien established a clear probability of torture). Accordingly, the following orders will be entered.

**ORDER:** DHS' appeal is sustained.

**FURTHER ORDER:** The Immigration Judge's order dated February 27, 2025, granting deferral of removal under the CAT is vacated.

**NOTICE:** If an applicant is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the applicant's departure pursuant to the order of removal, the applicant shall be subject to a civil monetary penalty of up to $998 for each day the applicant is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2025).