# Matter of G-M-I-, Respondent

*Decided February 4, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

   The relevance and the reliability of an expert witness' opinions are significantly undercut when those opinions are informed by anecdotal or inaccurate facts or data.

FOR THE RESPONDENT:  Benjamin J. Osorio, Esquire, Fairfax, VA

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Serena L. Podish, Assistant Chief Counsel

BEFORE:  Board Panel:  GOODWIN and VOLKERT, Appellate Immigration Judges; MCCLOSKEY, Temporary Appellate Immigration Judge.

MCCLOSKEY, Temporary Appellate Immigration Judge:

   This case was last before the Board on June 20, 2024, when we remanded the record to the Immigration Judge.  On March 26, 2025, the Immigration Judge granted the respondent's application for deferral of removal under the Convention Against Torture ("CAT").[1]  The Department of Homeland Security ("DHS") has appealed from that decision, challenging the Immigration Judge's reliance on the testimony of the respondent's expert witness.  The respondent opposes the appeal.  The appeal will be sustained.

## I. FACTUAL AND PROCEDURAL HISTORY

   The respondent is a native and citizen of the People's Republic of China. In 2014, the respondent was convicted of conspiracy to import 150 kilograms or more of cocaine into the United States and was sentenced to 14 years' imprisonment.  DHS subsequently issued a notice to appear, charging the respondent with removability.  The respondent conceded removability and filed an application for deferral of removal under the CAT.  After according the respondent's expert witness' statement and testimony full weight, the Immigration Judge found that the Chinese Government will detain and torture the respondent upon his return for committing drug crimes and

---

[1]  The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994).  8 C.F.R. §§ 1208.16(c), 1208.17 (2025); 8 C.F.R. § 1208.18(a) (2020).

causing reputational damage to China.  She consequently granted the respondent's application for deferral of removal under the CAT.  On appeal, DHS challenges the weight accorded to the expert witness' testimony and the Immigration Judge's grant of deferral of removal under the CAT.

## II. LEGAL ANALYSIS

To qualify for deferral of removal under the CAT, the respondent must demonstrate that it is more likely than not that he will be tortured by, at the instigation of, or with the consent or acquiescence of a public official or other person acting in an official capacity in China.  8 C.F.R. §§ 1208.16(c)(2), 1208.17 (2025); 8 C.F.R. § 1208.18(a)(1) (2020).  "[T]he requirements for a grant of protection under the CAT are exacting" and are not satisfied unless every step in the hypothetical chain of events that will lead to the respondent's torture is more likely than not to occur.  *Matter of A-A-R-*, 29 I&N Dec. 38, 46 (BIA 2025); *Matter of J-F-F-*, 23 I&N Dec. 912, 917–18, 918 n.4 (A.G. 2006).  "Evidence of the general possibility of torture does not meet the [respondent]'s burden of establishing that it is more likely than not he will be targeted for such treatment."  *Matter of A-A-F-V-*, 29 I&N Dec. 118, 121 (BIA 2025).  We review an Immigration Judge's predictive factual findings for clear error but review de novo the ultimate legal determination of whether the respondent has met the burden of proof.  *See Matter of A-A-R-*, 29 I&N Dec. at 41 (distinguishing between factual findings regarding the type and likelihood of mistreatment with the legal determination that this mistreatment constitutes torture).

### A. Expert Witness Evidence

In finding that the respondent established the requisite likelihood of torture, the Immigration Judge gave significant weight to the testimony and written affidavit of an expert in the legal system in the People's Republic of China.  The role of an expert witness is to "help the Immigration Judge understand the evidence or decide a fact in issue."  *Matter of J-G-T-*, 28 I&N Dec. 97, 101 (BIA 2020).  The testimony of an expert witness is less helpful when it merely interprets common types of evidence that Immigration Judges regularly encounter and do not need expert assistance to understand, such as country condition reports and news articles.  *See id.* at 100 (noting that Immigration Judges have relied on experts "to help them make factual determinations 'regarding matters on which they possess little or no knowledge or substantive expertise'" (citation omitted)).  "Expert witness testimony . . .  is treated the same as all evidence in immigration proceedings."  *Matter of M-A-M-Z-*, 28 I&N Dec. 173, 177 (BIA 2020).  The Immigration Judge, as the trier of fact, must determine what probative weight

to give the expert evidence based on the witness' area of expertise and whether any proffered opinion has a "sufficient factual basis." *Id.* at 177–78, 180–81 (quoting *Matter of J-G-T-*, 28 I&N Dec. at 104).

While an expert witness "may make reasonable inferences based on facts and data," *Matter of J-G-T-*, 28 I&N Dec. at 101, his or her opinion is "not conclusive fact." *Matter of M-A-M-Z-*, 28 I&N Dec. at 180. Only the Immigration Judge is "charged with making factual findings" and legal conclusions based on those facts. *Id.* An Immigration Judge "should only find an expert's opinion to be persuasive if there is a reliable factual or evidentiary basis for his or her conclusions." *Matter of J-G-T-*, 28 I&N Dec. at 103. "[T]o the extent that the record contains contradictory evidence, the Immigration Judge should explain why inferences made by an expert are reasonable and more persuasive than the other evidence presented." *Id.* at 106; *cf. Matter of M-A-M-Z-*, 28 I&N Dec. at 177–78 (explaining that "when the Immigration Judge makes a factual finding that is not consistent with an expert's opinion, it is important . . . to explain the reasons behind the factual findings"). An Immigration Judge should not merely defer to an expert's predictive inferences, especially when those inferences are based on commonly understood generalized evidence and "essentially establish" a factual finding or legal conclusion. *Matter of J-G-T-*, 28 I&N Dec. at 103–04.

Here, the respondent's expert witness provided two affidavits, and testimony, in which he stated his opinion that the respondent is more likely than not to face torture or execution upon removal to China, based on his assessment that (1) China routinely subjects individuals convicted of serious drug trafficking crimes to torture and death and (2) China will know of the respondent's removal in advance. The evidentiary basis underlying the expert's predictive inference, as outlined in his affidavits, includes articles describing China's hard line against drug trafficking crimes as a threat to public safety and the country's concern for its global reputation, China's relatively high use of the death penalty, and China's ability to track and monitor citizens and entrants with an extensive surveillance apparatus. The Immigration Judge accorded the expert witness's testimony and statements full weight and relied upon them in determining that the respondent would more likely than not be tortured in China.

We agree with DHS that the Immigration Judge erred in according the expert witness' evidence full weight. The expert witness' opinions did not have a "sufficient factual basis." *Id.* First, the expert did not profess any direct knowledge of the extent to which China tortures those convicted of drug trafficking crimes abroad, nor did he articulate any past professional

experience with death penalty cases in China or the way in which China implements the death penalty. Second, the expert noted in his report that "there is a paucity of statistics on torture and executions in China" and "little official information on the handling of expatriated drug-traffickers." He also did not provide any meaningful estimations on the number of individuals sentenced to death or the percentage of those convicted of crimes who were sentenced to death. Although he cited a law journal article stating that 95 percent of death sentences in China involve drug crimes, intentional homicide, and robbery, this statistic was not broken down further as to how likely a person convicted of drug crimes was to receive the death penalty or the likelihood of that the death penalty would be inflicted on individuals, like the respondent, who were convicted of drug trafficking in another country.

Admitting that it was very difficult to know exactly what would happen to the respondent, the expert claimed there were examples, as reported by human rights organizations, of Chinese citizens convicted of drug trafficking in other countries being detained upon return to China. In support of this assertion, the expert relied on a single anecdote about a Canadian national who was immediately arrested upon attempting to enter China after a conviction for a drug-related crime in Canada. The expert also referenced another single incident in 2017 when a tycoon in Hong Kong was abducted out of his hotel room and escorted into extralegal detention.

In making predictions about the harm the respondent would suffer in China, the expert witness did not distinguish between harm suffered by those convicted of drug crimes within China and those returning to China after being convicted of drug crimes abroad, nor did he provide any actual examples of China torturing or executing anyone convicted of drug trafficking abroad. The relevance of the anecdote involving a tycoon abducted in Hong Kong is unclear, as the vague testimony of the expert did not provide sufficient context to explain what the respondent has in common with this individual. Moreover, the expert's description of the anecdote about the Canadian national, which is further described in an article submitted into the record, was incorrect. This incident did not concern a Canadian national arrested and convicted in Canada for drug-related crimes in Canada, as the expert asserts, but rather a Canadian citizen who was arrested and convicted in a Chinese court for trafficking drugs in China—a fact pointed out by DHS in its opening statement. Additionally, the primary subject of the article originally received a 15-year sentence, and the death penalty was only imposed after a retrial (and allegedly as retribution for Canada's arrest of a Chinese telecommunications executive). This anecdote therefore bears little, if any, relevance to the respondent's circumstances.

The relevance and the reliability of an expert witness' opinions are significantly undercut when those opinions are informed by anecdotal or inaccurate facts or data. Because the expert relied on two anecdotes that are not analogous to the respondent's circumstances to support his prediction that the respondent would be detained and tortured due to his drug trafficking conviction in the United States, the Immigration Judge clearly erred in assigning significant weight to the expert's opinion without reasonably considering the apparent deficient underlying factual basis. *See Matter of J-G-T-*, 28 I&N Dec. at 104.

## B. Convention Against Torture

Turning to the respondent's application for deferral of removal under the CAT, we conclude upon de novo review, that the evidence cited by the Immigration Judge, including the expert witness' opinion concerning the probability of torture, was insufficient to meet the respondent's burden of proof. *See* 8 C.F.R. § 1208.16(c)(2). Even assuming that the Chinese Government will likely become aware of the respondent's drug conviction and detain him upon arrival, the expert witness' opinion that the respondent will likely be tortured relies upon the same kind of anecdotal and generalized country conditions evidence that we have explained does not establish a sufficiently individualized clear probability of torture. *See, e.g.*, *Matter of J-H-M-V-*, 29 I&N Dec. 278, 283 (BIA 2025) (finding that anecdotal evidence of some similarly situated individuals suffering severe harm is not sufficient to show that a particular alien is more likely than not to suffer harm rising to that level); *Matter of A-A-R-*, 29 I&N Dec. at 41–42 (same); *Matter of J-E-*, 23 I&N Dec. 291, 303–04 (BIA 2002) (same). The expert witness' conclusions relied upon general evidence that China has engaged in instances of harm rising to the level of torture and treats serious drug trafficking crimes particularly harshly for public safety and reputational reasons. However, the expert witness acknowledged that very little official information exists about the treatment of expatriated drug traffickers and admitted lacking familiarity with the exact details of Chinese criminal law or the repatriation process.

Evidence of the general possibility of torture does not meet the respondent's burden to show that he, in particular, would more likely than not be tortured, even if some similarly situated individuals have suffered torture. *See Matter of A-A-F-V-*, 29 I&N Dec. at 121; *Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1324 (11th Cir. 2007) (holding that an applicant for CAT protection must demonstrate an individualized risk of torture). Here, the respondent has not presented sufficient evidence that drug traffickers convicted of crimes outside China are more likely than not to

suffer torture.  He has also not presented sufficient evidence of any particular or specific interest in him by the Chinese government.  His argument ultimately depends on generalized country conditions evidence and an expert witness' opinion based on that same generalized evidence.  Generalized evidence that would otherwise be insufficient to establish an individualized clear probability of torture is not rendered sufficient merely because an expert witness reviews it and opines that a respondent is likely to be tortured. *See Matter of M-A-M-Z-*, 28 I&N Dec. at 177 (noting that expert testimony is treated the same as all evidence in the record and only an Immigration Judge makes findings).

The general evidence of China's harsh penalties for individuals convicted of drug trafficking crimes committed in China and the use of torture in Chinese prisons is insufficient to establish that the respondent will more likely than not be detained and tortured, extralegally or otherwise, based on his drug trafficking conviction in the United States.  *See, e.g.*, *Matter of M-B-A-*, 23 I&N Dec. 474, 479 (BIA 2002) (concluding that the harsh and life-threatening prison conditions in Nigeria were insufficient to warrant CAT protection where the respondent did not demonstrate that she would more likely than not be detained and tortured based on her drug convictions in the United States).  Upon our de novo review, we conclude that the record evidence, including the expert witness' opinion, is insufficient to satisfy the respondent's burden of proof for deferral of removal under the CAT.  *See Matter of M-S-I-*, 29 I&N Dec. 61, 62 (BIA 2025)).  We will therefore vacate the Immigration Judge's grant of this relief.  The respondent will be removed pursuant to the Immigration Judge's removal order.

**ORDER:**  DHS' appeal is sustained, and the Immigration Judge's March 26, 2025, order granting deferral of removal under the CAT is vacated.

**NOTICE:**  If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation.  *See* section 274D of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2025).  Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and

thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than 2 years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a) (2024).