# Matter of J-E-L-, Respondent

*Decided May 4, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The respondent did not establish a claim for protection under the Convention Against Torture because he did not show a clear probability of harm rising to the level of torture by gang or cartel members in Mexico and did not establish the requisite state action for government acquiescence to torture.

FOR THE RESPONDENT: Pro se

FOR THE DEPARTMENT OF HOMELAND SECURITY: Stacy Norcross, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, Chief Appellate Immigration Judge; GEMOETS and CHABAN, Appellate Immigration Judges.

CHABAN, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals from the Immigration Judge's February 26, 2024, decision granting the respondent's application for protection under the regulations implementing the Convention Against Torture ("CAT").[1] The respondent, a native and citizen of Mexico, has not responded to the appeal. DHS' appeal will be sustained.

## I. BACKGROUND

The respondent seeks protection from removal based on his fear of being tortured in Mexico by the Surenos gang and the Jalisco New Generation cartel ("CJNG") for his role as an informant against them while living in the United States in 2009.

In 2009, the respondent worked with authorities in the United States to incarcerate two gang members, one of whom is the respondent's relative. The respondent was then removed from the United States and lived in Mexico for about 13 years. In Mexico, the respondent received threats via

---

[1] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c), 1208.17 (2026); 8 C.F.R. § 1208.18(a) (2020).

phone calls and posters. His house was shot at in 2010 when he was living in Zacatecas, and in 2015 when he was living in Jalisco. The respondent relocated each time he started to receive threats. His United States citizen wife and children intermittently lived with him in Mexico, most recently from 2018 to 2023. The respondent and his family never had any direct contact with the people threatening him, but he believes Surenos and CJNG members were responsible. In March 2023, the respondent and his wife went to the public ministry to report the threats. The following month, the respondent was kidnapped outside his home in Jalisco. He does not know who kidnapped him. The respondent was held for several days and mistreated, but he managed to escape. He relocated to Colima, where he had no problems. He entered the United States in November 2023 at a designated port of entry after scheduling an appointment through the CBP One application.

The Immigration Judge found that the respondent generally testified credibly and granted him deferral of removal under the CAT. On appeal, DHS contends that the Immigration Judge erred in finding the respondent credible and concluding that he met his burden of proof for CAT deferral.

## II. DISCUSSION

A respondent seeking CAT protection has the burden to establish that it is more likely than not he will be tortured in the proposed country of removal if removed and that the torture would involve sufficient state action. *Aviles-Tavera v. Garland*, 22 F.4th 478, 486 (5th Cir. 2022); 8 C.F.R. § 1208.16(c)(2). Torture is defined as severe pain or suffering, whether physical or mental, that is intentionally inflicted for a proscribed purpose by, or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity. *Tabora Gutierrez v. Garland*, 12 F.4th 496, 502 (5th Cir. 2021); 8 C.F.R. § 1208.18(a)(1). Acquiescence to torture requires a public official to have awareness of, or remain willfully blind to, torturous conduct and breach their legal responsibility to prevent it. *Iruegas-Valdez v. Yates*, 846 F.3d 806, 812 (5th Cir. 2017).

The inquiry into whether a respondent is eligible for CAT protection is forward-looking. In assessing CAT claims, "all evidence relevant to the possibility of future torture" is considered, including evidence of past torture, evidence that the respondent could relocate to another part of the prospective country of removal where he is not likely to be tortured, and evidence of gross, flagrant, or mass violations of human rights within the country of removal. 8 C.F.R. § 1208.16(c)(3). The question of what is likely to happen

to a respondent is a factual finding that we review for clear error. *Matter of A-A-R-*, 29 I&N Dec. 38, 39 (BIA 2025); 8 C.F.R. § 1003.1(d)(3)(i) (2026). Whether the predicted outcome satisfies the definition of torture is a legal determination that we review de novo. *See Matter of A-A-F-V-*, 29 I&N Dec. 118, 122 (BIA 2025) (concluding the applicant did not show a clear probability of suffering harm amounting to "torture"); 8 C.F.R. § 1003.1(d)(3)(ii) (2026).

Assuming the respondent testified credibly, we will reverse the Immigration Judge's grant of deferral of removal under the CAT. The Immigration Judge's predictive findings about what is likely to happen to the respondent upon his removal to Mexico do not support the legal conclusion that the respondent is more likely than not to suffer harm constituting torture by, at the instigation of, or with the consent or acquiescence of a public official or other person acting in an official capacity.

In concluding that the respondent would more likely than not be tortured in Mexico, the Immigration Judge found there to be an escalating pattern of violence against him and found that he would be unable to relocate to avoid harm by the CJNG and the Surenos. However, while the Immigration Judge found that the respondent faced years of threats and intimidation in Mexico, including a kidnapping in Jalisco in 2023, the Immigration Judge properly determined that the past harm to the respondent in Mexico did not constitute past torture.

The respondent lived in Mexico for approximately 13 years without any physical harm or direct contact with cartel or gang members despite the threats and the shootings. He did not allege any in-person contact with cartel or gang members in Mexico until the kidnapping in 2023. He also offered only speculation about who was targeting him. While he assumed the perpetrators were people he knew, he never saw who shot at his home or left posters, nor does he know who kidnapped him. After escaping from his kidnappers, he relocated and had no problems. During his 13 years in Mexico, he had his U.S. citizen wife and children intermittently living with him. The Immigration Judge discussed the country conditions evidence, finding that it illustrated high levels of violence perpetrated by criminal organizations, high levels of impunity, targeting of perceived informants, and collusion between public officials and criminal elements. However, this evidence is not particularized to the respondent or his situation. Moreover, the country conditions evidence does not reflect that the CJNG and the Surenos control all territory in Mexico.

Considering the totality of the record, the facts of this case do not establish an individualized risk of future torture to the respondent that is more likely than not. *See L.N. v. Garland*, 109 F.4th 389, 399–400 (5th Cir. 2024) (requiring particularized evidence that shows an individualized risk of torture). The basis for the respondent's fear is his cooperation with United States law enforcement that ended in 2009, and he was able to live in Mexico for roughly 13 years thereafter without suffering the torture he fears he will now suffer if removed. He also remained unharmed in Mexico for 7 months after his kidnaping and was able to wait for a CBP One appointment. We do not discount the incidents the respondent endured in Mexico over the years; however, he has not shown that gang or cartel members "will more likely than not torture [him], rather than leave him unharmed or subject him to lesser harms." *Matter of J-C-A-G-*, 29 I&N Dec. 331, 332 (BIA 2025). Given the lack of past torture, the passage of time, and the respondent's ability to relocate, the respondent has not shown a clear probability of harm rising to the level of torture by gang or cartel members. *See, e.g.*, *id.* at 333 (concluding that cooperation with United States law enforcement, country conditions evidence, and other factors did not establish a clear probability of torture by the cartel).

Moreover, based on the Immigration Judge's findings, the respondent's claim rests on his fear of cartel and gang members rather than public officials in Mexico. Even if we were to assume the respondent faced an individualized risk of harm rising to the level of torture based on his ties to the CJNG and the Surenos, the respondent has not met his burden to show that the harm he fears by gang or cartel members would be inflicted with the consent or acquiescence of a public official.

The Immigration Judge determined that the respondent would more likely than not be tortured with the acquiescence of a public official based on the respondent's assertion that he was kidnapped after filing a police report in Jalisco. The Immigration Judge also relied on general evidence of collusion between criminal organizations and some Mexican authorities unconnected to the respondent's specific circumstances. The Immigration Judge made no finding that Mexican authorities were or would be involved in any harm to the respondent. Rather, the Immigration Judge found that the respondent assumed his kidnappers were police officers and noted the general existence of collusion between some Mexican authorities and criminal groups.

The record does not contain evidence beyond speculation about who targeted the respondent, and there is no specific evidence as to collusion between the police in Jalisco and the CJNG or the Surenos. The record reflects that, despite receiving threats for over 13 years, the only time the

respondent contacted Mexican authorities was in 2023, and he was able to file a report. The facts and evidence in this case do not establish that a public official would more likely than not consent or acquiesce to torture of the respondent. *See, e.g.*, *Matter of A-A-R-*, 29 I&N Dec. at 46 (concluding that the factual findings did not support the determination that a public official would likely acquiesce to torture); *Matter of O-A-R-G-*, 29 I&N Dec. 30, 36 (BIA 2025) (describing "acquiescence"). The Immigration Judge's conclusion to the contrary relies on unsupported inferences that fall short of demonstrating the respondent satisfied his burden of proof.

## III.  CONCLUSION

The respondent has not met his burden to establish his eligibility for CAT protection. He was not tortured in the past. His speculation about what could happen, his fear of gang and cartel members, and the general country conditions evidence are insufficient to establish a clear probability that the respondent will be tortured wherever he relocates in Mexico. In addition, unsupported inferences do not establish the requisite state action. We will, therefore, sustain DHS' appeal and vacate the Immigration Judge's decision granting the respondent deferral of removal under the CAT.

**ORDER:**  DHS' appeal is sustained.

**FURTHER ORDER:**  The Immigration Judge's February 26, 2024, grant of deferral of removal under the Convention Against Torture is vacated, and the respondent is ordered removed from the United States to Mexico.

**NOTICE:**  If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14). Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than 2 years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a).