# Matter of D-G-B-L-, Respondent

*Decided January 15, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

  The serious nonpolitical crime bar to asylum and withholding of removal does not include a duress exception.

FOR THE RESPONDENT:  Katharine R. Ruhl, Esquire, Tucson, Arizona

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Amanda Ehredt, Assistant Chief Counsel

BEFORE:  Board Panel:  MULLANE, HUNSUCKER, and GEMOETS, Appellate Immigration Judges.

GEMOETS, Appellate Immigration Judge:

  This matter was last before the Board on October 17, 2024, when we remanded the record for further proceedings before the Immigration Judge. In a decision dated March 12, 2025, the Immigration Judge granted the respondent's applications for asylum under section 208(b)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(b)(1)(A) (2024), and protection under the regulations implementing the Convention Against Torture ("CAT").[1]  The Department of Homeland Security ("DHS") has appealed the Immigration Judge's decision, arguing in part that the Immigration Judge erred in finding a duress exception to the serious nonpolitical crime bar.  The respondent, a native and citizen of Mexico, has filed a response in opposition to the appeal.  The appeal will be sustained, the Immigration Judge's decision will be vacated, and the respondent will be ordered removed.

## I. CREDIBILITY

  DHS argues that the Immigration Judge erred in finding the respondent credible despite inconsistencies between her testimony and the record of sworn statement created when she illegally entered the United States in 2009,

---

[1]  The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994).  8 C.F.R. § 1208.16(c) (2025); 8 C.F.R. § 1208.18(a) (2020).

the overall implausibility of her account, and the omissions in her credible fear interview. *See* INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii). We review an Immigration Judge's credibility finding for clear error. 8 C.F.R. § 1003.1(d)(3)(i) (2025). Clear error is a deferential standard of review, and we will not overturn an Immigration Judge's credibility finding so long as it is "plausible in light of the entire record," even if we "would have weighed the evidence differently in the first instance." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 687 (2021).

The Immigration Judge reviewed the relevant testimony and documentary evidence, acknowledged inconsistencies and omissions in the record, considered the respondent's explanations for those inconsistencies and omissions, and found that the respondent's testimony was credible under the totality of the circumstances. Affording the necessary deference owed to the Immigration Judge's factual findings, we conclude that his credibility finding is not clearly erroneous. *See id*.; *see also Rodriguez v. Holder*, 683 F.3d 1164, 1171 (9th Cir. 2012) (explaining that "where credibility determinations are at issue . . . 'even greater deference' must be afforded to the [Immigration Judge's] factual findings" (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)).

## II.  SERIOUS NONPOLITICAL CRIME

DHS also argues that the respondent is ineligible for asylum under the serious nonpolitical crime bar. Section 208(b)(2)(A)(iii) of the INA, 8 U.S.C. § 1158(b)(2)(A)(iii), provides that an alien is ineligible for asylum if "there are serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States." The term "serious reasons to believe" is equivalent to probable cause. *Gonzalez-Castillo v. Garland*, 47 F.4th 971, 974 (9th Cir. 2022); *Matter of E-A-*, 26 I&N Dec. 1, 3 (BIA 2012). "Probable cause 'is not a high bar'" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citations omitted); *see also Villalobos Sura v. Garland*, 8 F.4th 1161, 1167 (9th Cir. 2021) ("Probable cause exists when there is a 'fair probability' that the defendant committed the alleged crime." (citation omitted)).

Once DHS submits sufficient evidence to establish probable cause that a respondent committed a serious nonpolitical crime, the burden shifts to the respondent to show by a preponderance of the evidence that the disqualifying bar does not apply. *See Villalobos Sura*, 8 F.4th at 1167; 8 C.F.R. § 1240.8(d) (2025). Whether the facts found by the Immigration

Judge are sufficient to establish probable cause is a legal question that we review de novo. *See* 8 C.F.R. § 1003.1(d)(3)(ii); *see also Ornelas v. United States*, 517 U.S. 690, 699 (1996) (holding "that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal").

The respondent testified that she electronically transferred and physically transported millions of dollars in drug trafficking proceeds for the Sinaloa drug cartel from 2009 to 2023. She further acknowledged that she knew where the money was derived, referring to a "drug business," and that her actions were illegal in Mexico. Her admissions to engaging in drug trafficking activity for a drug cartel are sufficient to establish probable cause. *See Go v. Holder*, 640 F.3d 1047, 1053 (9th Cir. 2011). Further, the drug trafficking activities that she admitted to committing constitute serious crimes.[2] *See id.* at 1052–53 (agreeing with the Board that a respondent's participation "in a scheme to finance 'drug transactions'" was a serious crime). Thus, because the record evidence establishes probable cause that the respondent committed a serious nonpolitical crime in Mexico, the burden shifts to her to demonstrate that the serious nonpolitical crime bar does not apply.

The Immigration Judge determined that the respondent met her burden to show that the serious nonpolitical crime bar does not apply because she committed her crimes under duress based on the abuse inflicted on her by her ex-partner. Section 208(b)(2)(A)(iii) of the INA, 8 U.S.C. § 1158(b)(2)(A)(iii), does not include an express duress exception. "The Supreme Court [of the United States] has repeatedly cautioned against reading words, elements, or implied exceptions into a statute." *Matter of Negusie*, 28 I&N Dec. 120, 126 (A.G. 2020) (citing *Dean v. United States*, 556 U.S. 568, 572 (2009), and *Bates v. United States*, 522 U.S. 23, 29 (1997));[3] *see also Louisville & Nashville R.R. Co. v. Mottley*, 219 U.S. 467, 479 (1911) (explaining that courts lack authority to "add [a statutory] exception based on equitable grounds when Congress forebore to make such an exception"); *Lopez v. Garland*, 116 F.4th 1032, 1043 (9th Cir. 2024) ("[W]hen the language is plain, we have no right to insert words and phrases,

---

[2]  The Immigration Judge did not find, nor does the respondent argue, that her drug trafficking activity had any political component.

[3]  On October 22, 2025, Attorney General Bondi issued *Matter of Negusie*, 29 I&N Dec. 285 (A.G. 2025), affirming that *Matter of Negusie*, 28 I&N Dec. 120, remains good law.

so as to incorporate in the statute a new and distinct provision." (quoting *United States v. Temple*, 105 U.S. 97, 99 (1881))).

Section 208(b)(2)(A)(iii) of the INA, 8 U.S.C. § 1158(b)(2)(A)(iii), includes various limitations on when crimes will bar relief:  The crime must be serious, nonpolitical, committed outside the United States, and committed before the respondent's arrival.  The absence of language regarding a voluntariness requirement provides strong evidence that the serious nonpolitical crime bar should be applied to any alien who has committed a qualifying crime, regardless of duress.  *See Matter of Negusie*, 28 I&N Dec. at 126; *cf. United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 491 (2001) (discussing that the application of a necessity defense would be unsuccessful where statutory language provides a "determination of values" negating the defense).

At the time the serious nonpolitical crime bar was first added to the INA through section 203 of the Refugee Act of 1980, Pub. L. 96-212, 94 Stat. 102, 107 (codified at former section 243(h)(2)(C) of the INA, 8 U.S.C. § 1253(h)(2)(C) (Supp. IV. 1980)), as a bar to withholding of deportation, [4] several provisions of the INA required voluntary conduct.  *See Matter of Negusie*, 28 I&N Dec. at 132 & n.7 (listing provisions).  "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (citation omitted).  That Congress did not include language requiring the serious nonpolitical crime be committed voluntarily, whereas other provisions specifically required voluntariness, indicates that it did not intend for duress to obviate the serious nonpolitical crime bar. [5]  As both we and the Immigration Courts are bound by the language of the statute, we cannot read a duress exception into section

---

[4]   It was later applied to asylum and withholding of removal through sections 305 and 604 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-602, 3009-691 (codified at sections 208(b)(2)(A)(iii) and 241(b)(3)(B)(iii), 8 U.S.C. §§ 1158(b)(2)(A)(iii), 1231(b)(3)(B)(iii) (Supp. II 1996)).

[5]   The respondent's argument on appeal that the serious nonpolitical crime bar should not apply to her because other sections of the INA expressly authorize waivers of certain criminal grounds of removability where there is a connection between the criminal act and the alien's abuse by a domestic partner is likewise unpersuasive.  Had Congress intended the serious nonpolitical crime bar to be subject to a similar waiver, it would have expressly included such a waiver.

208(b)(2)(A)(iii) of the INA, 8 U.S.C. § 1158(b)(2)(A)(iii), where one is not included in the statutory language.

In finding that duress is relevant to the serious nonpolitical crime bar, the Immigration Judge references the consideration of duress in the criminal context. Duress is an affirmative defense that may be raised by a defendant in certain criminal proceedings to "excuse conduct that would otherwise be punishable." *Dixon v. United States*, 548 U.S. 1, 6 (2006). "[B]ut the existence of duress normally does not controvert any of the elements of the offense itself." *Id*. Rather, "the defense of duress . . . allows the defendant to 'avoid liability . . . because coercive conditions or necessity negates a conclusion of guilt even though the necessary *mens rea* was present.'" *Id.* at 7 (quoting *United States v. Bailey*, 444 U.S. 394, 402 (1980)).

"[R]emoval proceedings are civil in nature and are not considered a criminal process that may result in punishment." *Matter of Devison*, 22 I&N Dec. 1362, 1366 n.8 (BIA 2001). Although the duress defense is available to criminal defendants to avoid punishment for their otherwise unlawful conduct, "it is well established that immigration proceedings do not require the protections of the criminal law." *Matter of Negusie*, 28 I&N Dec. at 146; *see also Matter of M-H-Z-*, 26 I&N Dec. 757, 763 (BIA 2016) (rejecting the argument that "because duress may be a defense to negate culpability in the criminal context, an exception for duress should similarly apply" in the immigration context). The serious nonpolitical crime bar does not require that we decide whether a respondent is criminally liable for past conduct. Rather, we are tasked only with assessing whether the record evidence establishes serious reasons for believing that she committed a crime rendering her ineligible for asylum and withholding of removal.

The Attorney General has recognized that "the possibility that duress or coercion, if established, may excuse an otherwise criminal act does not mean that there were not 'serious reasons' for believing that alien had committed the crime in the first place." *Matter of Negusie*, 28 I&N Dec. at 139. The Supreme Court has likewise held in the probable cause context "that innocent explanations—even uncontradicted ones—do not have any automatic, probable-cause-vitiating effect." *Wesby*, 583 U.S. at 68.

The respondent argues that our decision in *Matter of E-A-* implies that a duress exception may factor into the serious reasons to believe analysis. We find no basis for this argument. In *Matter of E-A-*, the respondent argued that he should not be subject to the serious nonpolitical crime bar because he was "forced to assist" in the criminal acts because he was being watched by political party leaders. 26 I&N Dec. at 7. The Board rejected his argument,

noting that despite his "generalized fear," the record evidence did not demonstrate that the respondent would have suffered dire consequences if he had not participated in the criminal acts. *Id.* at 8. Because we found that the respondent had not demonstrated that he was forced to participate in the criminal acts of the group, we did not have cause to address whether there was a duress exception to the serious nonpolitical crime bar.

The respondent also points to guidelines issued by the United Nations High Commissioner for Refugees ("UNHCR") stating that duress is a factor that should be considered in determining whether an asylum applicant is subject to the serious nonpolitical crime bar. *See* U.N. High Comm'r for Refugees, Guidelines on International Protection: Application of the Exclusion Clauses: Article 1F of the 1951 Convention Relating to the Status of Refugees, HCR/GIP/03/05 (Sept. 4, 2003), https://www.refworld.org/policy/legalguidance/unhcr/2003/en/14733. Guidance issued by UNHCR "may be a useful interpretive aid, but it is not binding on the Attorney General, the [Board], or United States courts." *Matter of Negusie*, 28 I&N Dec. at 140 (quoting *INS v. Aguirre-Aguirre*, 526 U.S. 415, 427 (1999)); *see also Matter of E-A-*, 26 I&N Dec. at 8 (explaining that the serious nonpolitical crime analysis is governed by the INA, not UNHCR guidance). Furthermore, the guidance relied on by the respondent was issued in 2003, well after Congress enacted the serious nonpolitical crime bar in 1980 based on the 1951 United Nations Convention Relating to the Status of Refugees, *opened for signature* July 28, 1951, 19 U.S.T. 6259, 189 U.N.T.S. 150 (entered into force Apr. 22, 1954), and the 1967 United Nations Protocol Relating to the Status of Refugees, *opened for signature* Jan. 31, 1967, 19 U.S.T. 6223, 606 U.N.T.S 267 (entered into force Oct. 4, 1967; for the United States Nov. 1, 1968). UNHCR's guidance subsequent to Congress' enactment of the bar is "of limited value when compared to the distinct development of this nation's domestic law and the strong textual evidence that the" serious nonpolitical crime bar "has no exception for duress or coercion." *Matter of Negusie*, 28 I&N Dec. at 141; *see also Aguirre-Aguirre*, 526 U.S. at 427–28 (rejecting a respondent's argument that the serious nonpolitical crime bar should be analyzed under a balancing test set forth in UNHCR guidance). We are ultimately unpersuaded by the UNCHR guidance relied on by the respondent because it conflicts with the plain statutory language enacted by Congress.

Based on the foregoing, we conclude that the serious nonpolitical crime bar to asylum and withholding of removal does not include a duress exception. Thus, the respondent cannot raise the affirmative defense of duress to overcome evidence that she committed a serious nonpolitical crime or avoid the plain language of the INA precluding relief when there is

probable cause such a crime has been committed. The respondent admitted to knowingly laundering millions of dollars for a drug cartel, which constitutes extremely serious criminal conduct. Her claim of duress is legally insufficient to satisfy her burden to show that there are not serious reasons to believe she committed a serious nonpolitical crime in Mexico. She is therefore ineligible for asylum and withholding of removal under the INA and the CAT. *See* INA §§ 208(b)(2)(A)(iii), 241(b)(3)(B)(iii), 8 U.S.C. §§ 1158(b)(2)(A)(iii), 1231(b)(3)(B)(iii); 8 C.F.R. § 1208.16(d)(2) (2025).[6]

## III. CONVENTION AGAISNT TORTURE

Even though the respondent is ineligible for asylum and withholding of removal, she may still be able to establish her eligibility for deferral of removal under the CAT. *See* 8 C.F.R. § 1208.17(a) (2025). An applicant for protection under the CAT bears the burden to establish that it is more likely than not that she would be tortured at the instigation, or with the consent or acquiescence, of a public official or other person acting in an official capacity in the country of removal. *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). We conclude upon de novo review that the record is insufficient to establish that it is more likely than not that the respondent would be tortured with the consent or acquiescence of a public official in Mexico. *See Matter of A-A-R-*, 29 I&N Dec. 38, 41 (BIA 2025) (explaining that whether the record evidence satisfies a CAT applicant's burden of proof is a legal question).

We, like the Immigration Judge, acknowledge that the respondent's ex-partner inflicted severe harm on her in Mexico. However, the record does not contain objective evidence that he would be aware of her return to Mexico or that he would be actively looking for her. *See Matter of M-B-A-*, 23 I&N Dec. 474, 479 (BIA 2002) (holding that "a chain of assumptions and a fear of what might happen" is insufficient to meet an alien's burden under the CAT). The respondent testified that her ex-partner left her alone for significant periods between 2005 and 2022, and it is unclear if he currently has any interest in her. Additionally, although the respondent testified that her ex-partner made threats against her daughter and other family members to force her to comply with his demands, there is no evidence that the respondent's ex-partner has attempted to harm or threatened any of her family members since she left Mexico in 2023.

---

[6] Given our disposition of this matter, we need not address the merits of the respondent's claims for asylum and withholding of removal. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

The Immigration Judge found that by "fleeing from Mexico, and thereby depriving [her ex-partner] of the ability to use her for cartel-related activities, it is reasonably likely that Respondent would be targeted by the Sinaloa Cartel if she returns to Mexico.".   The Immigration Judge's finding effectively means that any person who left Mexico after engaging in criminal activity for a cartel in Mexico is at risk of being targeted for torture upon their return.   Such a generalized assumption with broad applicability to anyone who has left Mexico after working for a drug cartel is insufficient to establish that the respondent herself faces a "*particularized threat* of torture." *Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) (citation omitted). The respondent was severely harmed by her ex-partner in the past, and she vaguely testified that he was previously able to find her in other areas of Mexico at unspecified times after she left him.   However, absent objective evidence showing how he would currently become aware of her return to Mexico or that he or the Sinaloa cartel in general have any present continuing interest in harming her, we conclude that the record is insufficient to establish a clear probability that the respondent would be tortured in Mexico.  *See Matter of J-C-A-G-*, 29 I&N Dec. 331, 333–34 (BIA 2025).

We also conclude that the record is insufficient to establish that it is more likely than not that a public official would acquiesce to any potential harm inflicted on the respondent by her ex-partner.   In finding the requisite acquiescence, the Immigration Judge relied heavily on general country conditions evidence showing that the Mexican authorities are ineffective and often negligent in investigating violence against women and enforcing laws designed to protect women from violence.   However, "[e]vidence that a government has been generally ineffective in preventing or investigating criminal activities does not alone establish that a public official will acquiesce to torture." *Matter of O-A-R-G-*, 29 I&N Dec. 30, 36 (BIA 2025); *accord Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014).

The Immigration Judge also relied on the "lack of law enforcement response when Respondent repeatedly reported [her ex-partner's] abuse to authorities" and an incident when "law enforcement officers drove Respondent back to her ex-partner's residence" after she tried to make a police report.   However, the respondent never testified as to what she specifically told any police officers about her ex-partner's conduct. Acquiescence requires a public official, "prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity."   8 C.F.R. § 1208.18(a)(7); *see also Zheng v. Ashcroft*, 332 F.3d 1186, 1194 (9th Cir. 2003) (holding that government acquiescence for CAT protection includes willful blindness).   Absent evidence that the respondent made the

police aware of specific extreme conduct amounting to torture, the record is insufficient to show that they acquiesced to activity constituting torture.

For the reasons discussed above, the respondent is ineligible for asylum, withholding of removal, and protection under the CAT. DHS' appeal will be sustained, the Immigration Judge's decision will be vacated, and the respondent's applications will be denied.

**ORDER:** DHS' appeal is sustained.

**FURTHER ORDER:** The Immigration Judge's March 12, 2025, decision is vacated.

**FURTHER ORDER:** The respondent's applications for asylum, withholding of removal, and protection under the CAT are denied.

**FURTHER ORDER:** The respondent is ordered removed to Mexico.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* INA § 274D, 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2025). Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than two years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a) (2024).