**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**May 19, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

DANIA PATRICIA TURCIOS-
ORTIZ; M.D.Z.T, a minor,

    Petitioners,

v.

TODD BLANCHE, United States
Attorney General,*

    Respondent.

No. 25-9536
(Petition for Review)

_____

**ORDER AND JUDGMENT***
_____

Before **McHUGH**, **CARSON**, and **ROSSMAN**, Circuit Judges.
_____

Petitioners Dania Turcios-Ortiz and her minor son M.D.Z.T, both

citizens and natives of Honduras, entered the United States unlawfully in

---

    * On April 2, 2026, Todd Blanche became Attorney General of the United States. Consequently, he has been substituted for Pamela J. Bondi as Respondent per Fed. R. App. P. 43(c)(2).

    ** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

March 2021.[1] A year later, the Department of Homeland Security (DHS) initiated removal proceedings against them under 8 U.S.C. § 1182(a)(6)(A)(i). Ms. Turcios-Ortiz conceded removability but applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). On May 3, 2024, an immigration judge (IJ) denied all relief. In an oral ruling, the IJ determined Ms. Turcios-Ortiz was statutorily ineligible for withholding of removal under the serious nonpolitical crime bar in 8 U.S.C. § 1231(b)(3)(B)(iii), and not entitled to relief under CAT because she failed to show likelihood of torture if removed to Honduras, 8 C.F.R. § 1208.16(c)(2). The Board of Immigration Appeals (BIA) dismissed Ms. Turcios-Ortiz's appeal, and she now seeks review in this court. Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny the petition for review.

---

[1] M.D.Z.T is a derivative beneficiary on Ms. Turcios-Ortiz's applications, meaning his eligibility for relief turns on her application. *See* 8 U.S.C. § 1158(b)(3)(A); 8 C.F.R. § 1208.21(a). On November 21, 2022, M.D.Z.T also filed his own application. RIII.74–87. Because the son's claims here are based on Ms. Turcios-Ortiz's claims, we use "Ms. Turcios-Ortiz" in our discussion to refer to both petitioners.

# I

## A[2]

On October 25, 2016, Ms. Turcios-Ortiz and Marlon Abel Zuniga (Marlon), her then-partner and the father of her three children, attended a late-night vigil at a local church. Marlon went home to retrieve a coat, and while there, a neighbor shot him over a supposed land dispute. Ms. Turcios-Ortiz learned about the shooting within minutes and rushed home to find Marlon laying in the front yard. Assisted by neighbors, she took Marlon to a hospital four hours away. Marlon's father reported the shooting to the police, but nobody was ever arrested for the crime.

Marlon sustained serious injuries from the shooting. He required bedrest for about six months after his release from the hospital. During this period, Marlon began to abuse cocaine and "rock or crack." RI.116–17, 307. He became addicted to drugs and worked very little. Ms. Turcios-Ortiz started working at a restaurant to support the family.

---

[2] We take the facts from the BIA order on review and, because that order was issued by a single member of the BIA and its factual recitation is sparse, from the underlying IJ decision, Ms. Turcios-Ortiz's credible testimony, *see* RI.60 (the IJ finding the respondent credible), and uncontroverted parts of the administrative record. No party disputes the historical facts recited here.

Initially, Ms. Turcios-Ortiz did not understand how Marlon was paying for his drugs. Then, in July 2019, gang members approached her at the restaurant where she worked. Ms. Turcios-Ortiz did not know the gang members, but they addressed her by name and informed her Marlon had been obtaining drugs from the gang on credit.[3] The gang members told Ms. Turcios-Ortiz that Marlon owed a large debt to the gang, and she needed to repay it. They refused to accept cash payment for Marlon's debt; instead, they told Ms. Turcios-Ortiz she had to deliver drugs for the gang. The gang members threatened to hurt her children if she refused. Marlon also pressured Ms. Turcios-Ortiz to comply with the gang's demand.

In August 2019, Ms. Turcios-Ortiz began delivering drugs for the gang. She made deliveries two to three times per week for at least six months. The gang members told Ms. Turcios-Ortiz that they would "attack" her children if she stopped. RI.122. She never received money or any other payment for making the deliveries.

---

[3] The agency variously refers to the individuals who pressured Ms. Turcios-Ortiz to transport drugs as drug dealers, gang members, and criminals. *See* RI.4 (BIA decision referring to the individuals as "gang members"); RI.63 (IJ decision referring to the individuals as "drug dealers or gang members" and "criminals"). As we will discuss, Ms. Turcios-Ortiz "never knew" exactly which gang these men were affiliated with nor does the record specify. RI.63.

At the end of 2020, Marlon abandoned Ms. Turcios-Ortiz and their children. Ms. Turcios-Ortiz decided this was her opportunity to stop working for the gang. She told the gang members she would no longer transport drugs for them because it was "illegal" and "putting [her] life at risk." RI.124. And after six months, Ms. Turcios-Ortiz believed she had paid off Marlon's debt. The gang members refused to release her and threatened to hurt her and her family if she did not continue working for them. Ms. Turcios-Ortiz never reported these threats to the police in Honduras. She feared the police "conspired with . . . the gangs." RI.127.

Then, using the COVID-19 pandemic as an excuse, Ms. Turcios-Ortiz told gang members she needed to take a break from delivering drugs. For about three months in early 2021, Ms. Turcios-Ortiz remained in her home and worked at the restaurant, but she did not make any deliveries for the gang. Ms. Turcios-Ortiz continued to receive threats during this period, but she was not harmed.

Around this same time, Ms. Turcios-Ortiz made plans to flee Honduras for the United States. She only had the means to take one child with her. She brought her youngest son M.D.Z.T, then seven years old, because he suffered from serious health problems. Ms. Turcios-Ortiz's other two children remained in Honduras. Before she left Honduras, Ms. Turcios-

Ortiz told her family not to let her children leave the house without an adult for fear they would be harmed.

On March 27, 2021, Ms. Turcios-Ortiz and M.D.Z.T entered the United States unlawfully. Since then, the gang members have not contacted her, but family members in Honduras have been targeted at least twice. At the end of 2022, individuals tried to abduct Ms. Turcios-Ortiz's eldest son Anderson. When Ms. Turcios-Ortiz's father intervened, he was beaten. In late 2023, Anderson and Ms. Turcios-Ortiz's sister experienced a hit and run. A few days later, someone left a note at the home of Ms. Turcios-Ortiz's parents stating, "the problems were going to continue" for her family because she had fled Honduras. RI.134–35. Ms. Turcios-Ortiz believes the same gang members who she worked for are now targeting her family.

**B**

On March 16, 2022, Ms. Turcios-Ortiz received a Notice to Appear charging her with removability under 8 U.S.C. § 1182(a)(6)(A)(i). She conceded removability but applied for asylum, *id.* § 1158, withholding of removal, *id.* § 1231(b)(3), and protection under CAT, 8 C.F.R §§ 1208.16(c), 1208.17. About two years later, in April 2024, the IJ held a merits hearing,

where Ms. Turcios-Ortiz appeared with counsel. Ms. Turcios-Ortiz testified and submitted evidence.[4]

On May 3, 2024, the IJ issued an oral decision denying all relief.[5] The IJ found Ms. Turcios-Ortiz credible, observing her testimony was "detailed and consistent." RI.60. Still, the IJ found none of her claims availing. *First*, Ms. Turcios-Ortiz was statutorily ineligible for withholding of removal under the serious nonpolitical crime bar in 8 U.S.C. § 1231(b)(3)(B)(iii). Ms. Turcios-Ortiz testified "she assisted drug dealers in Honduras with transporting drugs . . . two to three times per week for at least six months" the IJ said. RI.62. This conduct "would clearly be considered drug trafficking," the IJ found, and "drug trafficking is a serious nonpolitical crime." RI.63. Under these circumstances, the IJ concluded Ms. Turcios-Ortiz's "own testimony is sufficient" to warrant application of the statutory

---

[4] As relevant to Ms. Turcios-Ortiz's CAT claim, she submitted the U.S. Department of State's Honduras 2023 Human Rights Report describing country conditions, and the IJ admitted this report as Exhibit 9. As we will discuss, Exhibit 9 is not in the administrative record. Ms. Turcios-Ortiz also submitted additional supporting documentation, including her declaration; a sworn statement from her sister; a proposed expert affidavit on gang violence in Honduras; a proposed expert affidavit on violence against women in Honduras; a photograph of her father after he was beaten at the end of 2022; and multiple reports and articles on country conditions in Honduras.

[5] The IJ denied Ms. Turcios-Ortiz's application for asylum as untimely. Ms. Turcios-Ortiz did not challenge that ruling before the BIA, and she does not raise it here.

bar in § 1231(b)(3)(B)(iii). RI.62. *Next*, the IJ determined Ms. Turcios-Ortiz was ineligible for CAT protection. The IJ "accept[ed] that [Ms. Turcios-Ortiz] is afraid of returning to Honduras[.]" RI.63. And in the IJ's view, the U.S. Department of State's Honduras 2023 Human Rights Report (the Report) shows "the gang problem in Honduras is serious" and gangs "commit acts of violence that cause severe pain and suffering." RI.63. Relying in part on the Report, however, the IJ found "there is evidence that [Ms. Turcios-Ortiz] can relocate to another part of the country where she is not likely to be tortured." RI.65. The IJ also found that, shortly before coming to the United States, Ms. Turcios-Ortiz "refused to deliver more drugs" for the gang for approximately three months, and while "the gangs threatened her" during this period, she was never harmed. RI.65. Accordingly, in the IJ's view, Ms. Turcios-Ortiz failed to establish "she would more likely than not be tortured by gang members or other private actors that the government would be unable or unwilling to control if she returned to Honduras." RI.63–64; *see* 8 C.F.R. § 1208.16(c)(2) (requiring applicants for CAT relief to "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal").

Ms. Turcios-Ortiz appealed to the BIA. As to her withholding of removal claim, Ms. Turcios-Ortiz argued the IJ erred in applying the serious nonpolitical crime bar under § 1231(b)(3)(B)(iii) because she was "coerced"

8

into drug trafficking by the gangs in order to repay Marlon's debt. RI.16. As to her CAT claim, Ms. Turcios-Ortiz insisted she had satisfied her burden to show likelihood of torture upon return to Honduras, and the IJ's contrary determination was not supported by the record. On March 6, 2025, a single member of the BIA affirmed the IJ's ruling in a two-page order and dismissed the appeal. This timely petition for review followed.

## II

"Congress has carefully circumscribed judicial review of BIA decisions." *Garland* v. *Ming Dai*, 593 U.S. 357, 365 (2021). We review the BIA's legal determinations *de novo* and its findings of fact for substantial evidence. *Xue* v. *Lynch*, 846 F.3d 1099, 1104 (10th Cir. 2017). Under the substantial-evidence standard, the agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]" 8 U.S.C. § 1252(b)(4)(B); *see Nasrallah* v. *Barr*, 590 U.S. 573, 584 (2020) (explaining § 1252(b)(4)(B) refers to the substantial-evidence standard). Substantial evidence review is "highly deferential." *Nasrallah*, 590 U.S. at 583.

Where, as here, a single member of the BIA decides the appeal and issues a brief order under 8 C.F.R. § 1003.1(e)(5), we have described some rules for our appellate review. "[W]e will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance."

9

*Uanreroro* v. *Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). But "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.*; *see id.* (explaining "[a]s long as the BIA decision contains a discernible substantive discussion . . . our review extends no further, unless [the BIA] explicitly incorporates or references an expanded version of the same reasoning below"). Looking to the IJ's ruling is particularly "appropriate where the BIA incorporates by reference the IJ's rationale or repeats a condensed version of its reasons while also relying on the IJ's more complete discussion." *Id.* That is the situation here, where the BIA's brief order affirming the IJ's decision under § 1003.1(e)(5) expressly relies on and incorporates "the reasons stated by the Immigration Judge[.]" RI.4.

### III

Ms. Turcios-Ortiz makes several arguments in her petition for review. She contends, *first,* the BIA erred in concluding she is statutorily ineligible for withholding of removal under the serious nonpolitical crime bar. *See* 8 U.S.C. § 1231(b)(3)(B)(iii). She concedes she delivered illegal drugs in Honduras before entering the United States but argues the statutory bar should not apply because her conduct was coerced by the gang. *Second*, she challenges the BIA's conclusion that she is ineligible for CAT protection. Ms. Turcios-Ortiz insists she carried her burden to show that, if removed to

10

Honduras, it is more likely than not that she will be tortured. Relatedly, she argues for the first time on appeal that the IJ failed to use the correct legal standard when analyzing the evidence supporting her CAT claim. We consider, and reject, each argument in turn.

## IV

### A

We begin with Ms. Turcios-Ortiz's claim that the agency wrongfully denied her application for withholding of removal under the serious nonpolitical crime bar in 8 U.S.C. § 1231(b)(3)(B)(iii). To be eligible for withholding of removal, an applicant must establish her "life or freedom would be threatened in [the country of removal] because of [her] race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1231(b)(3)(A). A person is ineligible for withholding of removal if, as relevant here, "there are serious reasons to believe that the alien committed a serious nonpolitical crime outside the United States before the alien arrived in the United States." *Id.* § 1231(b)(3)(B)(iii). Before we consider the merits, we must set out the standard of review for an agency's decision to deny withholding of removal under the serious

nonpolitical crime bar in § 1231(b)(3)(B)(iii). We have not previously considered this question.

Ms. Turcios-Ortiz asserts the "[t]he proper standard of review is *de novo.*" Op. Br. at 21. She does not meaningfully develop this argument, but points to cases under the REAL ID Act of 2005 recognizing that "whether the BIA applied the correct legal standard in making its determination" that a "crime was indeed particularly serious" is an issue reviewed *de novo.* Op. Br. at 21 (quoting *Brue* v. *Gonzales*, 464 F.3d 1227, 1232 (10th Cir. 2006) and citing *N-A-M* v. *Holder*, 587 F.3d 1052, 1055 n.2 (10th Cir. 2009)). The government says our review is for substantial evidence because "[w]hether an alien has committed a serious nonpolitical crime is a factual issue." Resp. Br. at 14 (citing *INS* v. *Elias-Zacarias*, 502 U.S. 478, 483–84 (1992) and *Villalobos Sura* v. *Garland*, 8 F.4th 1161, 1167 (9th Cir. 2021)). The government is correct.

As the Eighth Circuit has explained, "[t]he evaluation of a serious nonpolitical crime is conducted on a case-by-case basis considering the facts and circumstances presented." *Barahona* v. *Garland*, 993 F.3d 1024, 1028 (8th Cir. 2021) (quoting *Matter of E-A-,* 26 I. & N. Dec. 1, 3 (BIA 2012)). Determinations under § 1231(b)(3)(B)(iii) are primarily factual questions subject to the substantial evidence standard in § 1252(b)(4)(B). That is the

consensus among our sister circuits that have addressed the issue.[6] *See Herrera-Elias* v. *Garland*, 96 F.4th 1040, 1043 (8th Cir. 2024) ("The IJ's finding that there are serious reasons to believe [petitioner] committed a serious nonpolitical crime is a finding of fact we review under the substantial evidence test." (internal quotation marks omitted)); *Villalobos Sura* v. *Garland*, 8 F.4th 1161, 1167 (9th Cir. 2021) (same); *Morgan* v. *Garland*, 120 F.4th 913, 921, 923–25 (1st Cir. 2024) (same); *Urbina-Mejia* v. *Holder*, 597 F.3d 360, 369–70 (6th Cir. 2010) (same); *Khouzam* v.

---

[6] The Third, Fourth, and Eleventh Circuits have applied the substantial evidence standard in this context in unpublished decisions. *See Marroquin-Retana* v. *Attorney General*, 675 F. App'x 216, 218–19 (3d Cir. 2017) (per curiam) (unpublished) ("review[ing] the agency's decision for substantial evidence" and finding "the Government submitted substantial evidence that [petitioner] had committed attempted manslaughter"); *Nguyen* v. *Holder*, 593 F. App'x 246, 246 (4th Cir. 2015) (per curiam) (unpublished) ("We conclude that substantial evidence supports the finding that 'there are serious reasons to believe that [petitioner] committed a serious nonpolitical crime outside the United States before [he] arrived in the United States.'" (quoting § 1231(b)(3)(B)(iii))); *Saldana* v. *U.S. Attorney General*, 431 F. App'x 801, 802–03 (11th Cir. 2011) (per curiam) (unpublished) ("Substantial record evidence supports the IJ's and BIA's finding that [petitioner] was ineligible for asylum and withholding of removal [under § 1231(b)(3)(B)(iii)]."). The Fifth Circuit does not appear to have passed on the issue in the withholding of removal context but has relied on the substantial evidence standard when considering the serious nonpolitical crime bar in the asylum context. *See Efe* v. *Ashcroft*, 293 F.3d 899, 905 (5th Cir. 2002) ("The finding of the [BIA] that [petitioner] committed a serious nonpolitical crime that barred him from receiving asylum is a finding of fact that we review under the substantial evidence test." (internal quotation marks omitted)).

*Ashcroft*, 361 F.3d 161, 165–66 (2d Cir.), *as amended* (Apr. 12, 2004) (same). We now take the same approach.

## B

### 1

Applying the substantial evidence standard, we discern no error. Before the IJ, Ms. Turcios-Ortiz testified she transported drugs for gang members in Honduras two to three times per week for at least six months. The IJ found "the conduct [Ms. Turcios-Ortiz] testified to would clearly be considered drug trafficking and that drug trafficking is a serious nonpolitical crime." RI.63. The IJ also explained the serious-reasons-to-believe standard in § 1231(b)(3)(B)(iii) "is equivalent to [] probable cause" and found Ms. Turcios-Ortiz's "own testimony is sufficient to meet this standard." RI.62. The BIA affirmed the IJ's serious nonpolitical crime bar determination based on Ms. Turcios-Ortiz's "own admissions" that she "knowingly transported drugs for a criminal organization in Honduras." RI.4.

The agency's approach—applying a probable cause standard when evaluating the phrase "serious reasons to believe" in § 1231(b)(3)(B)(iii)—was in line with agency practice and the views of other circuits that have interpreted the same statutory language. *See Matter of E-A-*, 26 I. & N. Dec. at 3 ("We interpret 'serious reasons for believing' to be equivalent to

probable cause, as have the circuit courts that have considered this question."); *Go* v. *Holder*, 640 F.3d 1047, 1052 (9th Cir. 2011) ("We interpret serious reasons to believe as being tantamount to probable cause." (internal quotation marks omitted)); *see also Morgan*, 120 F.4th at 924 n.6 (noting "all other circuits that have taken up the question" of applying a probable-cause standard to conduct the "serious reasons to believe" inquiry "have either confirmed its lawfulness or held that it is a minimum standard under the statute").[7]

Probable cause "is not a high bar[.]" *Kaley* v. *United States*, 571 U.S. 320, 338 (2014). In the criminal context, we have understood probable cause as "something more than a bare suspicion but less than a preponderance of the evidence at hand." *United States* v. *Johnson*, 43 F.4th 1100, 1107 (10th Cir. 2022) (internal quotation marks omitted). It requires "a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford* v. *Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).

---

[7] No party takes issue with the agency's use of the probable-cause standard. Given the parties' arguments, we do not consider the matter further in this case. The First Circuit took a similar approach in *Morgan* v. *Garland*, relying on a "probable-cause standard as a means of effectuating the statutory 'serious reasons to believe' directive" but declining "to pass on" the lawfulness of that standard because no party challenged the agency's application of it. 120 F.4th at 924, 924 n.6.

Applying the probable-cause standard, it is unsurprising courts have denied withholding of removal under the serious nonpolitical crime bar if "the petitioner admitted the alleged crime or there was corroborating information supporting the alleged crime." *Barahona*, 993 F.3d at 1028; *see Go*, 640 F.3d at 1052–53 (serious reasons to believe standard satisfied based on petitioner's own "admi[ssions] under oath" that he committed the alleged drug crimes); *Khouzam*, 361 F.3d at 166 (serious reasons to believe standard satisfied based on police investigative reports and a warrant indicating petitioner's fingerprints were found at the crime scene and he had sustained injuries that were consistent with the alleged crime); *Zheng* v. *Holder*, 698 F.3d 710, 713–14 (8th Cir. 2012) (serious reasons to believe standard satisfied based on petitioner's testimony about committing the crime); *Herrera-Elias*, 96 F.4th at 1044–45 (serious reasons to believe standard satisfied based on petitioner's admission "that he knowingly transported drugs and guns for the MS-13 gangsters on multiple occasions"); *Urbina-Mejia*, 597 F.3d at 369 (serious reasons to believe standard satisfied based on petitioner's "own testimony about his actions while a member of the gang").

So too here. Ms. Turcios-Ortiz testified she engaged in drug trafficking in Honduras before she entered the United States. The IJ and BIA found probable cause was satisfied based on this testimony. We thus

16

have no trouble concluding substantial evidence supports the BIA's determination that Ms. Turcios-Ortiz is ineligible for withholding of removal under the serious nonpolitical crime bar.

**2**

Ms. Turcios-Ortiz does not meaningfully resist this conclusion. Instead, she contends the bar should not apply because she engaged in drug trafficking under duress. The BIA rejected this argument, explaining Ms. Turcios-Ortiz cites no authority "that suggests that there is a recognized duress exception to the serious nonpolitical crime bar." RI.4. In her petition for review, Ms. Turcios-Ortiz again has offered no authority to support her position, and as far as we can tell, none exists.

The text of the statute provides no duress exception. 8 U.S.C. § 1231(b)(3)(B)(iii). On its face, the serious nonpolitical crime bar is mandatory. Ms. Turcios-Ortiz does not explain how we can endorse her argument in light of the plain statutory text.

The case law addressing the issue also does not favor Ms. Turcios-Ortiz's position. Recently, in *Matter of D-G-B-L-*, the BIA rejected the duress argument advanced by Ms. Turcios-Ortiz, though in a related context. *See* 29 I. & N. Dec. 392, 396–98 (BIA 2026). There, the BIA considered whether a duress exception exists to the serious nonpolitical crime bar to asylum in 8 U.S.C. § 1158(b)(2)(A)(iii). *See id.* at 392, 393–98.

17

That statute uses nearly identical language to the provision before us, stating a noncitizen is ineligible for asylum if "there are serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States." 8 U.S.C. § 1158(b)(2)(A)(iii); *see generally Morgan*, 120 F.4th at 924–26 (applying the same analysis to determine whether an applicant committed a serious nonpolitical crime barring eligibility for asylum under 8 U.S.C. § 1158(b)(2)(A)(iii) and withholding of removal under *id.* § 1231(b)(3)(B)(iii)). Construing the statute, the BIA held "the serious nonpolitical crime bar to asylum and withholding of removal does not include a duress exception." *Matter of D-G-B-L*, 29 I. & N. Dec. at 397. The BIA further reasoned, "[t]he absence of language regarding a voluntariness requirement provides strong evidence that the serious nonpolitical crime bar should be applied to any alien who has committed a qualifying crime, regardless of duress." *Id.* at 395. The agency's interpretation of the statute aligns with our own reading of the plain text, so we find it instructive. *See Loper Bright Enters.* v. *Raimondo*, 603 U.S. 369, 412 (2024).

Finding no support in immigration law, Ms. Turcios-Ortiz draws on federal criminal law, where duress can be an affirmative defense. She points to *United States* v. *Jurado-Lopez*, 338 F. Supp. 2d 246, 251–52 (D. Mass. 2004), which she says "may be *persuasive authority* in the 'serious non-

political crime' context." Op. Br. at 23. There, a district court granted a downward departure under the United States Sentencing Guidelines because the crime occurred after life-threatening attacks against the defendant's family. *Jurado-Lopez*, 338 F. Supp. 2d at 248, 254. But *Jurado-Lopez* has no application here. Of course, as a general matter, "pending criminal charges may carry a risk of adverse immigration consequences." *Padilla* v. *Kentucky*, 559 U.S. 356, 369 (2010). But Ms. Turcios-Ortiz offers no persuasive argument to conclude federal criminal law meaningfully informs the analysis of the serious nonpolitical crime bar.[8]

Finally, and in the alternative, Ms. Turcios-Ortiz argues the IJ "categorically rejected" and "failed to consider" her evidence of duress. Op. Br. at 27. Ms. Turcios-Ortiz does not meaningfully develop this argument in her opening brief. *See Harsco Corp.* v. *Renner*, 475 F.3d 1179, 1190 (10th

---

[8] Ms. Turcios-Ortiz's reliance on case law discussing what constitutes a "particularly serious crime" for purposes of 8 U.S.C. § 1231(b)(3)(B)(ii) is not helpful. *See* Op. Br. at 22, 25 (quoting *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (BIA 2007) and *N-A-M*, 587 F.3d at 1055). That is a different statutory context, and Ms. Turcios-Ortiz has not explained how it informs the inquiry here, especially since the cases she cites do not even involve duress. Similarly, she seems to suggest duress is relevant to the application of other statutory bars. But she fails to develop this argument or explain how it applies to withholding of removal under the serious nonpolitical crime bar in § 1231(b)(3)(B)(iii). *See United States* v. *Munoz*, 812 F.3d 809, 821 n.12 (10th Cir. 2016) (holding appellant waived his argument "by failing to develop" it).

19

Cir. 2007) ("[A] party waives those arguments that its opening brief inadequately addresses."). In any event, her assertion is unavailing. In determining whether Ms. Turcios-Ortiz had committed a "serious nonpolitical crime," the IJ specifically said it "consider[ed] the facts and circumstances presented" in her case. RI.62. The record confirms as much. And the BIA explicitly adopted and incorporated the IJ's reasoning.

Accordingly, we conclude substantial evidence supports the agency's decision that Ms. Turcios-Ortiz is ineligible for withholding of removal under the serious nonpolitical crime bar.

## V

We next consider Ms. Turcios-Ortiz's contention that the agency's denial of CAT relief is not supported by substantial evidence. We must also reject this argument.

## A

"CAT prohibits removal of a noncitizen to a country where the noncitizen likely would be tortured." *Nasrallah*, 590 U.S. at 580. "The burden of proof is on the applicant . . . to establish that it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *Matter of H-L-S-A-*, 28 I. & N. Dec. 228, 239 (BIA 2021) (explaining an applicant for CAT protection "must establish that each link in a hypothetical chain of events is more likely than

not to happen" (internal quotation marks omitted)). "Relief from removal under [] CAT is mandatory if the applicant proves" likelihood of torture. *Garcia-Botello* v. *Bondi*, 168 F.4th 1245, 1257 (10th Cir. 2026).

CAT's implementing regulations define "[t]orture" as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity[.]" 8 C.F.R. § 1208.18(a)(1). In assessing a claim for relief under CAT, the agency must consider "all evidence relevant to the possibility of future torture," including "[e]vidence of past torture," "[e]vidence that the applicant could relocate to a part of the country of removal where . . . she is not likely to be tortured," "[e]vidence of gross, flagrant[,] or mass violations of human rights," and "[o]ther relevant information regarding conditions in the country of removal." *Id.* § 1208.16(c)(3)(i)–(iv).

"[W]here the BIA determines a petitioner is not eligible for relief, we review the decision to determine whether the record on the whole provides substantial support for that determination." *Igiebor* v. *Barr*, 981 F.3d 1123, 1131 (10th Cir. 2020) (internal quotation marks omitted). Under the substantial evidence standard, "we cannot reverse the determination of the BIA unless the record compels us to conclude that it was wrong." *Neri-*

21

*Garcia* v. *Holder*, 696 F.3d 1003, 1008 (10th Cir. 2012) (internal quotation marks omitted).

B

Applying these standards, we discern no reversible error. Ms. Turcios-Ortiz's main argument for reversal is "substantial evidence does not support" the agency's finding that she "could *reasonably* relocate within Honduras" to avoid torture.[9] Op. Br. at 29–31 (capitalization altered) (quoting RI.4). According to Ms. Turcios-Ortiz, the agency's relocation finding is based on its mischaracterization of the Report, which was introduced into evidence at the merits hearing but is not found in the administrative record. Properly construed, Ms. Turcios-Ortiz explains, the Report shows the "omnipresence of gang and [drug] trafficker violence

---

[9] The IJ said, at the conclusion of its oral ruling:

> [E]ven if the court accepted that [Ms. Turcios-Ortiz] was at risk for torture in her old neighborhood, the court would find it insufficient to show that she could not avoid the risk of torture by relocating to another part of Honduras. For that reason, the court finds the respondent not eligible for protection under the Convention against Torture and denies the application.

RI.65. Likewise, the BIA explained in affirming the IJ's denial of CAT relief, "the [IJ] concluded that [Ms. Turcios-Ortiz] could reasonably relocate within Honduras to avoid being tortured by the gang members she fears if she returns to Honduras[.]" RI.4.

across Honduras," which means relocation within Honduras would be impossible. Op. Br. at 33.

For its part, the government concedes the Report is missing from the record and admits the IJ "mischaracterized" the Report "because [contrary to the IJ's finding, the Report] does not state that crime is higher in urban areas." Resp. Br. at 21 n.7. But in the government's view, "whether crime is higher in 'urban area[s] or rural area[s]'" is irrelevant because Ms. Turcios-Ortiz fails to demonstrate that relocation is unreasonable on the basis of the existing administrative record. Resp. Br. at 21 n.7. Ultimately, says the government, "the agency reasonably found Ms. [Turcios-Ortiz's] fear of torture speculative and not supported by the record evidence." Resp. Br. at 22. The government has the better argument.

At the outset, we acknowledge the Report is not in the administrative record. And we are mandated to resolve the petition for review "only on the administrative record." 8 U.S.C. § 1252(b)(4)(A) (requiring "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based"). Here, substantial evidence in the administrative record supports the agency's determination that Ms. Turcios-Ortiz is not eligible for CAT relief. As to whether she could relocate to a part of Honduras where she is not likely to be tortured, Ms. Turcios-Ortiz admitted she does not know exactly which gang she worked

23

for or what geographic areas they controlled. As to whether relocation was even necessary, the IJ found the gangs did not harm Ms. Turcios-Ortiz for a three-month period in 2021 "[e]ven when she refused to deliver more drugs" but remained in Honduras. RI.65. Relatedly, the IJ reasoned that "the incidents that have happened to [Ms. Turcios-Ortiz's] family since she left Honduras . . . do[] not establish that she would more likely than not be tortured or killed in Honduras upon her return." RI.65. The BIA expressly incorporated all "the reasons stated by the [IJ]" to affirm the denial of CAT relief. RI.4. Ms. Turcios-Ortiz does not challenge these findings in her petition for review. Nor did she meaningfully challenge these findings before the BIA. In its order dismissing the appeal, the BIA observed that, as to CAT relief, Ms. Turcios-Ortiz "generally argues that her testimony shows that relocation is not possible because gangs in Honduras are widespread and interconnected but does not further elaborate on this contention or cite to record evidence in support of this claim." RI.4. Accordingly, we conclude the agency's decision that Ms. Turcios-Ortiz did not meet her burden to show likelihood of torture is readily supported by "the record on the whole" which "provides substantial support for that

24

determination." *Igiebor*, 981 F.3d at 1131 (internal quotation marks omitted).[10]

## C

Finally, we consider Ms. Turcios-Ortiz's related contention that remand is required because the agency, in denying CAT relief, failed to apply "the correct legal standard for torture as defined by 8 C.F.R. § 1208.18(a)(1)," and thus incorrectly assessed whether she had met her burden to show likelihood of torture. Op. Br. at 36. She argues, "the IJ's discussion of torture . . . did not mention any legal standard for torture or how that standard was applied to the uncontested facts." Op. Br. at 36. The government maintains this argument is "not exhausted" because

---

[10] Ms. Turcios-Ortiz suggests remand is required under *SEC* v. *Chenery Corp.*, 318 U.S. 80 (1943). In *Chenery*, the Supreme Court held agency action "cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Id.* at 95. There is no *Chenery* problem here. Our disposition is based on the complete reasoning specifically identified by the agency to support its likelihood of torture determination. *See Elzour* v. *Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004) ("[O]ur review is confined to the reasoning given by the [agency], and we will not independently search the record for alternative bases to affirm.") (citing *Chenery Corp.*, 318 U.S. at 95). In any event, remand on the CAT claim would be "futile" on the record before us. *Zapata-Chacon* v. *Garland*, 51 F.4th 1191, 1196 (10th Cir. 2022) (clarifying remand is not mandatory when "governing law would *require* the agency to reach a necessary result" (internal quotation marks and brackets omitted)); s*ee generally NLRB* v. *Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion) (noting remand is not required where it "would be an idle and useless formality" and "*Chenery* does not require that we convert judicial review of agency action into a ping-pong game").

Ms. Turcios-Ortiz failed to raise it before the BIA. Resp. Br. at 22 (citing *Garcia-Carbajal* v. *Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010), *abrogated in part on other grounds by Santos-Zacaria* v. *Garland*, 598 U.S. 411 (2023)). We agree with the government.

We "may review a final order of removal only if . . . [the petitioner] has exhausted all administrative remedies available to the [petitioner] as of right[.]" 8 U.S.C. § 1252(d)(1). "It is a fundamental principle of administrative law that an agency must have the opportunity to rule on a challenger's arguments before the challenger may bring those arguments to court." *Garcia-Carbajal*, 625 F.3d at 1237. This principle "bears special force in the immigration context, where Congress has reduced it to a statutory command." *Id.* (citing 8 U.S.C. § 1252(d)(1)). "We enforce the exhaustion requirement by declining to consider the unexhausted issue." *Miguel-Pena* v. *Garland*, 94 F.4th 1145, 1155 (10th Cir. 2024) (explaining "[i]ssue exhaustion is both 'a statutory command' under § 1252(d)(1) and part of the 'fundamental principle of administrative law'") (quoting *Garcia-Carbajal*, 625 F.3d at 1237); *see also Igiebor*, 981 F.3d at 1134 (explaining petitioner never made an argument in his brief on appeal to the BIA so the issue "is unexhausted and beyond this court's review").

Before the BIA, Ms. Turcios-Ortiz correctly cited 8 C.F.R. § 1208.18(a)(1) for the definition of torture. But she never argued the IJ

failed to apply this standard. Ms. Turcios-Ortiz's argument is thus unexhausted, so we cannot consider it.

**IV**

We **DENY** Ms. Turcios-Ortiz's petition for review.[11]

Entered for the Court

Veronica S. Rossman
Circuit Judge

---

[11] We dismiss as moot Ms. Turcios-Ortiz's motion for a supplemental briefing schedule to address *Matter of D-G-B-L-*, 29 I. & N. Dec. 392.